UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
OSWALD A. LEWIS,

Plaintiff,                                    **ORDER ADOPTING REPORT
                                              AND RECOMMENDATION IN**
    -against-                                 **PART**

BUREAU OF ALCOHOL, TOBACCO & FIREARMS;
HOWARD STERN; AYESHA WINSTON; UNITED          16-CV-1057(KAM)(JO)
STATES MARSHALS SERVICE; PATRICK
DONOHUE; SANDY RAO; CHRISTOPHER
BARTOSH; ANTHONY DINEEN; ROBERT
LEDEGAR; BRIAN BANKS; and RYAN
WESTFIELD,

Defendants.
--------------------------------------X
**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Oswald A. Lewis ("plaintiff") commenced the

instant action on February 29, 2016 pursuant to *Bivens v. Six*

*Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.

388 (1971), asserting various violations of his constitutional

rights in connection with his arrest on August 26, 2014 in

Queens, New York.  (*See* Complaint, ECF No. 1, at 1-2.)[1]

Plaintiff filed an amended complaint ("Am. Compl." or the

"amended complaint," ECF No. 27) on December 9, 2016.  Presently

before the court is the Report and Recommendation of United

States Magistrate Judge James Orenstein, filed on August 17,

2018, recommending that the court grant in part and deny in part

_____

[1]     References to page numbers in citations to plaintiff's submissions to
the court in this action are to the page numbers assigned by the court's ECF
system.

defendants' motion for summary judgment (ECF No. 57), filed by

defendants the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF"); the United States Marshals Service ("USMS");

ATF Special Agents Howard Stern and Ayesha Winston; and Deputy

United States Marshals Christopher Bartosh, Patrick Donohue,

Sandy Rao, Brian Banks, Ryan Westfield, Robert Ledogar, and

Anthony Dineen (collectively, "defendants").[2]  (Report and

Recommendation re Motion for Summary Judgment ("R&R" or the

"Report and Recommendation"), ECF No. 62, at 1.)  More

specifically, Judge Orenstein recommended that the court "deny

the [summary judgment] motion with respect to [plaintiff's]

excessive force claims against the seven Deputy Marshals, and

grant it in all other respects."  (*Id.*)

Defendants timely objected to specific portions of

Judge Orenstein's R&R (*see* Objection to R&R ("Obj. or the

"objection"), ECF No. 64), and plaintiff has filed a response to

defendants' objection.  (*See* Plaintiff's Objection ("Pl. Resp.,"

or the "response"), ECF No. 66.)  For the reasons set forth

---

[2]     This Order refers to each individual defendant by his or her surname
and title.  Additionally, although certain documents spell Deputy Marshal
Bartosh's last name "Bartos," plaintiff's operative amended complaint and
defendants' papers indicate that the correct spelling is "Bartosh."  (*See*
Amended Complaint, ECF No. 27, at ECF pp. 1, 3; Defendants' Statement of
Material Facts Pursuant to Local Rule 56.1, ECF No. 57-3, ¶¶ 37, 42.)
Similarly, although certain documents in the record spell Deputy Marshal
Donohue's last name "Donahue," the transcript of his deposition annexed as
Exhibit 88 to the Declaration of Kevan Cleary, Esq., ECF No. 57-8, at ECF pp.
19-20, indicates that the correct spelling is Donohue.

below, defendants' objection is overruled in part, and the court adopts in part the remainder of Judge Orenstein's thorough and well-reasoned Report and Recommendation.

## Background

The court assumes familiarity with the underlying facts and procedural history, as set forth in greater detail in the R&R. (*See* R&R at 1-4.) As relevant here, on August 26, 2014, in Queens, New York, United States Marshals Service and New York Police Department personnel arrested plaintiff, and plaintiff was later convicted in this court of assaulting the arresting officers with a deadly weapon, unlawfully discharging and possessing a firearm, and doing so while a fugitive and a previously convicted felon, and possessing a firearm with an obliterated serial number. (*See* Am. Compl. at 4-5; Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("DSMF"), ECF No. 57-3, ¶¶ 4-5; Plaintiff's Response to Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("PSMF"), ECF No. 58-1, ¶ 4-5.) To date, the criminal case against plaintiff arising out of his assault on arresting officers has not been terminated in his favor, and plaintiff is presently incarcerated following his conviction. (DSMF ¶ 5; PSMF ¶ 5; *see also* R&R at 2.)

As relevant to this court's review of the Report and Recommendation, plaintiff's amended complaint asserts that the arresting officers used excessive force by applying handcuffs that were too tight and by kicking plaintiff in the face after he was already restrained. (*See* Am. Compl. at 3, 5, 15.) Plaintiff also alleges that defendants violated his rights by fabricating evidence against him. (*See id.* at 3, 13.) In a letter dated May 19, 2017, to the Assistant United States Attorney defending this civil action, plaintiff stated that he sought to proceed only on the foregoing claims for fabrication of evidence and excessive force based on the United States Marshals' entry to effect his arrest, and injuries sustained while being handcuffed, and after he was arrested. (*See* May 19, 2017 Letter, ECF No. 44.) Plaintiff thereby abandoned any other claims he may have sought to assert in the amended complaint.

Defendants sought, and were granted, leave to move for summary judgment with respect to all of plaintiff's claims (*see* May 16, 2017 Minute Entry and July 19, 2017 Scheduling Order), and the motion was fully submitted on November 29, 2017. On April 23, 2018, the undersigned judge referred defendants' summary judgment motion to the Honorable James Orenstein, United States Magistrate Judge, for a report and recommendation. (April 23, 2018 Referral Order.)

4

Judge Orenstein issued the Report and Recommendation on August 17, 2018.  The Report and Recommendation recommended that the doctrine of sovereign immunity bars all of plaintiff's claims against the ATF and the USMS, and that defendants' motion be granted as to the ATF and the USMS.  (R&R at 6.)  Additionally, the Report and Recommendation noted that plaintiff's "claim that defendants fabricated evidence against him . . . can only succeed by establishing the invalidity of [plaintiff's] conviction," pursuant to the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), which applies to *Bivens* actions under the Second Circuit's decision in *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995).  (*Id.* at 6-7.)  The Report and Recommendation further noted that plaintiff "must prove that his conviction has been reversed or otherwise rendered legally invalid" to establish its invalidity, but that plaintiff "has not secured the favorable termination of his criminal case."  (*Id.* at 7.)  Consequently, the Report and Recommendation recommended that "defendants are entitled to summary judgment on the claim of fabricating evidence."  (*Id.* at 7.)

The Report and Recommendation found, with respect to the excessive force claim, that "the fact that [plaintiff] assaulted the officers does not preclude the possibility that

they used excessive force in arresting him, and *Heck* therefore does not bar the [excessive force] claim." (*Id.* (citations omitted).) The Report and Recommendation further noted that plaintiff "alleges that officers kicked him in the face, causing him injury, *after* he was already in handcuffs and contemporaneous medical records describe corresponding injuries to [plaintiff]'s eye and nose." *Id.* (citing PSMF ¶ 40 and Plaintiff's Exhibits, ECF No. 59-1, at 28-30).) According to the Report and Recommendation, based on the foregoing evidence, "a jury could reasonably conclude that even though [plaintiff] assaulted defendant officers, after he was restrained, he was subjected to excessive force by the defendant officers." (*Id.* (quoting *Prioleau v. Caserta*, 2012 WL 5389992, at *7 (E.D.N.Y. Sept. 12, 2012), *report and recommendation adopted*, 2012 WL 5389931 (E.D.N.Y. Oct. 29, 2012)).)

The Report and Recommendation further concluded that qualified immunity does not bar plaintiff's excessive force claim against the individual law enforcement officers based on plaintiff's assertion that he was kicked in the face after he was restrained. (R&R at 8.) The Report and Recommendation relied, in relevant part, on *Tracy v. Freshwater*, in which the Second Circuit observed that it was "well established" as of 2000, that "the use of entirely gratuitous force is unreasonable

6

and therefore excessive." (*Id.* (citing *Tracy v. Freshwater*, 623
F.3d 90, 99 n.5 (2d Cir. 2010)).)

Additionally, the Report and Recommendation found that
"the record includes sufficient detail to allow a fact-finder to
conclude that each of the defendant Deputy Marshals either
engaged directly in the use of excessive force or witnessed it
and failed to discharge their duty to intervene" to protect
plaintiff from the use of excessive force. (R&R at 8-9
(citations omitted). More specifically, the Report and
Recommendation notes that Deputy Marshals Bartosh, Banks,
Westfield, and Dineen all "directly took part in the physical
struggle to subdue [plaintiff] in which [plaintiff] claims he
was kicked." (*Id.* at 9 (citing Am. Compl. at 27-28 and PSMF ¶
40).)[3]

Further, the Report and Recommendation noted that
Deputy Marshals Don[o]hue, Rao, and Ledogar "were all present
and involved in effecting [plaintiff's] arrest and had the
opportunity to witness and intervene in the allegedly excessive
use of force." (*Id.* (citing Defendants' Ex. 30, ECF No. 57-7 at

---

[3]     In the document styled "Plaintiff's Opposition to Defendants' Statement
of Material Facts Pursuant to Rule 56.1(a)," plaintiff asserts that after he
was placed in handcuffs, defendant Deputy Marshal "Ryan Westfield began
repeatedly kicking plaintiff in the face."  (ECF No. 59-2, at ECF p. 11 ¶
17.)  This statement is unsworn, and does not cite to admissible evidence.
Nonetheless, the court considers plaintiff's excessive force claim after he
was placed in handcuffs to apply only to defendant Deputy Marshal Westfield,
because the record does not identify any other defendant as striking
plaintiff after he was restrained in handcuffs.

30; Defendants' Ex. 81, ECF No. 57-8 at 6; and Defendants' Ex. 88, ECF No. 57-8 at 20).) Consequently, the Report and Recommendation concluded that Deputy Marshals Bartosh, Donohue, Rao, Banks, Westfield, Ledogar, and Dineen should be denied summary judgment on plaintiff's excessive force claims against them.

The Report and Recommendation, however, concluded that the record "does not suffice . . . to sustain excessive force claims against the two ATF agents [plaintiff] has sued," as ATF Agents Stern and Winston were not involved in plaintiff's arrest, and instead merely photographed evidence at the scene the day after. (*Id.* at 9 (citations omitted).) Thus, the Report and Recommendation recommended that the court "dismiss the claims against [Agents Stern and Winston]." (*Id.*) In summary, the Report and Recommendation concludes that "the court [should] deny the [defendants'] motion [for summary judgment] with respect to [plaintiff]'s excessive force claims against defendants Bartos[h], Donohue, Rao, Banks, Westfield, Ledogar, and Dineen; and grant it in all other respects." (*Id.*)

The USMS defendants timely objected to the Report and Recommendation on August 30, 2018. (*See* Obj.) Plaintiff filed a response to defendants' objection, styled as an "objection," which is dated September 9, 2018, and which was received by the

court on September 14, 2018.  (*See* Pl. Resp.)  Although

plaintiff's response states that plaintiff "disagrees" with the

Report and Recommendation's conclusion that defendants should be

granted summary judgment on plaintiff's fabrication of evidence

claim (*id.* at 2), it was filed well after the August 31, 2018

objection deadline, and, therefore plaintiff's objection is not

timely and is denied.

## Legal Standard

### I.   Review of Report and Recommendation

A district court may refer a dispositive motion,

including a motion for summary judgment, to a magistrate judge

for a report and recommendation.  *See* 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b).  When a magistrate judge issues a report

and recommendation regarding a dispositive motion, the district

court reviews those portions of the report and recommendation to

which a party has timely objected under a *de novo* standard of

review, and "may accept, reject, or modify, in whole or in part,

the findings or recommendations made by the magistrate judge."

28 U.S.C. § 636(b)(1)(C); *accord* Fed. R. Civ. P. 72(b)(3) ("The

district judge must determine de novo any part of the magistrate

judge's disposition that has been properly objected to.").  As

to portions of a report and recommendation on a dispositive

motion "to which no timely objection has been made, a district

court need only satisfy itself that there is no clear error on the face of the record." *Jarvis v. N. Am. Globex Fund, L.P.*, 823 F. Supp. 2d 161, 163 (E.D.N.Y. 2011) (quoting *Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)).

## II. Motion for Summary Judgment

Federal Rule of Civil Procedure ("Rule") 56, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).

### A. Generally Applicable Principles

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. There is a genuine issue of material fact only where there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or

is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

When presented with a motion for summary judgment, the court may not "weigh the evidence," and instead must "view the evidence in the light most favorable to the party opposing summary judgment, . . . draw all reasonable inferences in favor of that party, and . . . eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *accord Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting *Anderson*, 477 U.S. at 255)); *Simon v. City of New York*, 893 F.3d 83, 91 (2d Cir. 2018) ("We review a district court's grant of summary judgment *de novo*, resolving all ambiguities and drawing all reasonable factual inferences in favor of the party against whom summary judgment is sought." (internal quotation marks and citation omitted)).

The moving party has the burden of establishing the absence of a genuine dispute as to any material fact, and in opposing summary judgment, the nonmoving party "need only present evidence from which a jury might return a verdict in his

favor" to defeat a motion for summary judgment. *Anderson*, 477

U.S. at 256-57. To meet this burden, however, a party opposing

summary judgment must "come forward with specific facts showing

that there is a *genuine issue for trial*," not merely "show that

there is some metaphysical doubt as to the material facts."

*Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002)

(emphasis in original) (quoting *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

In opposing summary judgment, it is "not sufficient

merely to assert a conclusion without supplying supporting facts

or argument," and a party must instead set forth "concrete

particulars." *BellSouth Telecommunications, Inc. v. W.R. Grace*

*& Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotation

marks and citations omitted). Thus, "[t]he nonmoving party must

go beyond the pleadings, and . . . designate specific facts

showing that there is a genuine issue for trial." *Davis v. New*

*York*, 316 F.3d 93, 100 (2d Cir. 2002) (internal quotation marks

and citations omitted); *accord Celotex Corp. v. Catrett*, 477

U.S. 317, 324 (1986).

B.   **Special Considerations for *Pro Se* Litigants**

Where, as here, a party proceeds *pro se*, the court

must "read his supporting papers liberally, and . . . interpret

them to raise the strongest arguments that they suggest."

*Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citation omitted). "Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment." *Gittens v. Garlocks Sealing Techs.*, 19 F. Supp. 2d 104, 110 (W.D.N.Y. 1998) (collecting cases).

Additionally, when a party seeks summary judgment against a *pro se* adversary, as defendant seeks here, Local Rule 56.2 requires that the moving party file and serve on the *pro se party* a specific "Notice to *Pro Se* Litigant Who Opposes a Motion for Summary Judgment." That notice, in relevant part, advises the *pro se* party of the nature of a Rule 56 motion and his burden in responding to it. *See generally* Local Rule 56.2; *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999); *Sawyer v. Am. Fed'n of Gov't Employees, AFL-CIO*, 180 F.3d 31, 34-35 (2d Cir. 1999). Here, defendants' moving papers include a "Notice to *Pro Se* Litigant" that complies with Local Rule 56.2 (*see* Notice, ECF No. 57-1), and Judge Orenstein concluded, and plaintiff does not object to the finding, that plaintiff is "aware[] of the requirements and ramifications of a summary judgment motion." (R&R at 5-6.) Accordingly, and as Judge Orenstein concluded, the court may resolve defendants' summary judgment motion.

## Discussion

**I.    Defendants' Objections**

Defendants object to the Report and Recommendation's conclusions regarding plaintiff's excessive force claim, the findings regarding the application of *Heck v. Humphrey*, and qualified immunity.  (*See generally* Obj.)

**A.    Excessive Force**

Defendants raise two objections to the Report and Recommendation's purported treatment of plaintiff's excessive force claims based on defendants' use of handcuffs.  (*See* Obj. at 5-9; *see also*, *e.g.*, Am. Compl. at 3, 5, 25 (asserting that plaintiff's handcuffs were so tight as to constitute excessive force).)  First, defendants assert that the Report and Recommendation "fails to even address defendants' argument in support of their summary judgment motion regarding the handcuffs allegedly being too tight," and that the Report and Recommendation improperly "assumes without legal analysis that a mere allegation of too-tight [hand]cuffs states a *Bivens* claim." (Obj. at 5 (citing R&R at 9).)  Second, defendants assert that the Report and Recommendation compounded its purported "error in . . . implying a *Bivens* remedy for a mere allegation that the [hand]cuffs were too tight, by also implying a *Bivens* claim

14

against" certain defendants for failing to intervene when plaintiff was handcuffed.  (*Id.* at 9.)

Both of the foregoing arguments are premised on the defendants' erroneous assumption that the Report and Recommendation concluded that defendants' motion for summary judgment should be denied as to plaintiff's excessive force claim based on the tightness of his handcuffs.  As discussed above, the Report and Recommendation's conclusion that defendants' motion for summary judgment should be denied as to plaintiff's excessive force claim is plainly based on plaintiff's "alleg[ation] that the officers kicked him in the face, causing him injury, *after* he was already in handcuffs, and contemporaneous medical records describ[ing] corresponding injuries to [plaintiff's] eye and nose."  (R&R at 7 (citation omitted) (emphasis in quoted material); *see also* R&R at 7-9 (making clear that plaintiff's allegations and evidence that he was kicked in the face after being handcuffed form the basis for recommended denial of motion as to excessive force claim).)

On *de novo* review, the court concludes Deputy Marshal Westfield is not entitled to summary judgment on plaintiff's excessive force claim based on plaintiff's statement, in his Opposition to Defendants' Local Rule 56.1 Statement (ECF No. 59-2 at 11 ¶ 17), that Deputy Marshal Westfield kicked him in the

face after he was handcuffed.  Additionally, defendant Deputy
Marshals Bartosh, Banks, Dineen, and Ledogar are not entitled to
summary judgment on plaintiff's claim that they failed to
intervene to stop the use of excessive force after plaintiff was
handcuffed.

The court further concludes that, defendant Deputy
Marshals Rao and Donohue are entitled to summary judgment on
plaintiff's excessive force and failure to intervene claims
arising from purportedly excessive force after plaintiff was
handcuffed.  Further, all defendants are entitled to summary
judgment on plaintiff's *Bivens* claims regarding excessive force
based on the tightness of his handcuffs, the manner in which
entry was made into his apartment, and any force applied to
plaintiff in the course of subduing and placing him in
handcuffs, up until the time at which plaintiff was actually
subdued and restrained by handcuffs.  (*See* May 19, 2017 Letter,
ECF No. 44 (stating plaintiff's intent to pursue the foregoing
claims).)

### 1.  *Use of Handcuffs*

Plaintiff's allegations that his handcuffs were too
tight did not form the basis upon which the Report and
Recommendation concluded that defendants should not be granted
summary judgment on plaintiff's excessive force claims.  The

16

court, on *de novo* review and viewing the record in the *pro se* plaintiff's favor, concludes that defendants are entitled to summary judgment on plaintiff's excessive force claim based on handcuffs being applied too tightly.

There is a consensus among courts in the Second Circuit that, absent any injury beyond temporary discomfort, the tight application of handcuffs does not constitute excessive force. *See Burroughs v. Mitchell*, No. 18-CV-0679(DNH)(ATB), 2018 WL 4237754, at *7 (N.D.N.Y. Sept. 6, 2018) ("[T]o sufficiently plead an excessive force claim based upon tight handcuffing, the plaintiff must allege more than a temporary injury. (citing *Jackson v. City of New York*, 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013))); *Sullivan v. City of New York*, No. 17-CV-3779(KPF), 2018 WL 3368706, at *10 (S.D.N.Y. July 10, 2018) ("It is well established in [the Second] Circuit that claims of excessive force are not established by allegations that overly tight handcuffs caused minor, temporary injuries." (internal quotation marks omitted ) (quoting *Guerrero v. City of New York*, No. 12-CV-2916(RWS), 2013 WL 5913372, at *6 (S.D.N.Y. Nov. 4, 2013))); *see also Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (even where restraints were justified for a prisoner during transport, material questions of fact existed "whether the risk of escape made it necessary for the defendants to

shackle the plaintiff so tightly as to cause severe pain and
permanent injury").

Here, plaintiff does not submit evidence to create a
genuine dispute of material fact regarding any injury he
sustained from the handcuffs.  Plaintiff had been shot in the
area of his forearm and wrist and the arresting law enforcement
officers placed him in handcuffs.  (*See* Plaintiffs' Exhibits,
ECF No. 59-1, at 29 (referring to single gunshot wound,
sustained to left "volar wrist at the carpal tunnel" or "left
forearm").  The undisputed record established that plaintiff
sustained a gunshot wound prior to the application of handcuffs,
and the medical records reveal no injury to plaintiff's wrists
or hands from the handcuffs.  (*See id.* at 28-30, 60.)
Consequently, defendants are entitled to summary judgment on
plaintiff's *Bivens* claim based on his allegation that his
handcuffs were too tight.

### 2.    Use of Force and Failure to Intervene After Plaintiff was Handcuffed

Viewing the record *de novo*, and in the light most
favorable to plaintiff, the court finds that plaintiff has come
forward with sufficient evidence consistent with his allegation
that he was kicked in the face after he was handcuffed.
Specifically, plaintiff has submitted a record from Jamaica
Hospital Medical Center stating that plaintiff presented with

18

"[f]acial abrasions" and that his "[left] eye [was] swollen shut," as well as a photograph depicting the condition of his face following his arrest, which shows significant swelling in his left eye. (*Id.* at 29-30.) Plaintiff has also submitted a medical record stating that he was "punched to [his] left eye and nose," although the record does not provide information regarding when he was punched relative to the application of handcuffs, or the basis for stating that he was punched, rather than kicked, and the medical record could have been based on plaintiffs' own statement. (*Id.* at 28.)

Additionally, plaintiff has submitted a medical record dated August 27, 2014, the day after his arrest, indicating swelling around his left eye extending over his "maxilla and zygoma," *i.e.* his upper jaw and cheek, as well as a "mildly displaced left nasal bone fracture." (*Id.* at 60.) Moreover, in plaintiff's response to defendants' Local Rule 56.1 statement, plaintiff contends that Deputy Marshal Westfield kicked him in the face after plaintiff's handcuffs were applied. (ECF No. 59-2 at 11 ¶ 17)

Further, although defendants assert, in a different portion of their objection, that plaintiff's facial injuries "resulted from being forcibly wrestled to the ground and pinned face-down" because plaintiff "did not surrender" when he was

arrested (Obj. at 20 n.1), defendants cite no record support for that proposition and plaintiff has disputed that he physically resisted arrest.  (ECF 59-2 at 12 ¶ 19.)  Nor do defendants cite, in their objection, or their underlying Memorandum of Law and Local Rule 56.1 Statement, any sworn testimony from any defendant or defendants, or other evidence, that would establish beyond genuine dispute that plaintiff's injuries resulted from the application of reasonable force in effecting his arrest. (*See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Def. Mem."), ECF No. 57-2, at 32-41 (discussing plaintiff's arrest) DSMF ¶¶ 35-46 (describing defendants' account of plaintiff's arrest, but stating no facts expressly relating to injuries to plaintiff's face).)

As noted, in plaintiff's submissions to the court, plaintiff asserts only that Deputy Marshal Westfield, and not any other Deputy Marshal, kicked plaintiff in the face after he had been subdued and handcuffed.  (*E.g.* Plaintiff's Affirmation, ECF No. 58-2, at 3 ¶ 7; Plaintiff's Opposition to Defendants' Statement of Material Facts Pursuant to Rule 56.1(a), ECF No. 59-2, at 11 ¶ 17.)  Thus, the court concludes that Deputy Marshals Bartosh, Banks, Dineen, Donohue, Rao, and Ledogar are entitled to summary judgment on plaintiff's claims that these Deputy Marshals actually used excessive force against him.

Consequently, defendants' motion for summary judgment regarding the actual application of excessive force (as opposed to failure to intervene) is denied solely with respect to plaintiff's excessive force claim against Deputy Marshal Westfield.

Where excessive force is used, however, "[a]n officer who fails to intercede is liable for the preventable harm caused by [other officers'] actions . . . where th[e] officer observes or has reason to know . . . that excessive force is being used," and has had "a realistic opportunity to intervene." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted). Here, defendants have submitted undisputed evidence that Deputy Marshals Rao and Donohue were unable to observe and otherwise could not have known that excessive force was being used, and thus lacked any realistic opportunity to intervene.

Deputy Marshal Rao's testimony at plaintiff's criminal trial stated that he observed the other deputies "attempt[ing] to secure" plaintiff, but turned his attention towards the premises to provide "cover" from unknown potential threats, such as a potential "[]other perpetrator," within the premises. (Rao Testimony, Declaration of Kevan Cleary, Esq. Ex. 81, ECF No. 57-8, at 6.)[4] Similarly, Deputy Marshal Donohue testified at

---

[4] References to page numbers in citations to exhibits to the Declaration of Kevan Cleary, Esq., are to the page numbers assigned by the court's ECF system.

plaintiff's criminal trial that as the Deputy Marshals on the scene "went to arrest [plaintiff][,] [plaintiff] went down to his knees," but Deputy Marshal Donohue "passed by with [his] shield to cover up the open door" because the Deputy Marshals "didn't know what could be inside" the premises, and that the arrest took place "behind [him]." (Donohue Testimony, Declaration of Kevan Cleary, Esq. Ex. 88, ECF No. 57-8, at ECF p. 20.) Deputy Marshal Donohue also testified that he and Deputy Marshal Rao went to the door of the premises with their shields, while "five or six" others actually arrested plaintiff, and "[w]hen [they] first got to the door," Deputy Marshal Rao suggested that they make entry into the premises "to clear the apartment and search it fully," but they waited at the door until additional law enforcement personnel arrived. (*Id.*)

This undisputed testimony by defendant Deputy Marshals Rao and Donohue in the record before the court warrants summary judgment in their favor and plaintiff's failure to intervene claims against Deputy Marshals Rao and Donohue are dismissed.

As for the remaining Deputy Marshal defendants, nothing in defendants' moving or objection submissions establishes beyond genuine dispute that any of the Deputy Marshals other than Deputy Marshals Rao and Donohue, who were present at the time of plaintiff's arrest lacked knowledge of

the use of excessive force, or lacked "sufficient time to intercede or w[ere otherwise] [in]capable of preventing the harm being caused by another officer." *Anderson v. Branen*, 17 F.3d at 557 (citation omitted).

Instead, defendants' memorandum of law simply asserts that plaintiff "fails to make any specific allegations as to how any [defendant] supposedly violated [plaintiff's] constitutional rights." (Def. Mem. at 43.) Defendants' Local Rule 56.1 Statement is wholly silent and void of supporting evidence as to any circumstances that might have precluded any individual defendant from intervening in the alleged post-arrest and post-restraint blows to plaintiff's face. (*See* DSMF ¶¶ 35-46.)[5]

Consequently, and viewing the evidence in the light most favorable to plaintiff and drawing all inferences in his favor, the court concludes that defendants have not shown that there is no genuine dispute as to any material fact that the facial injuries plaintiff sustained were caused prior to the time plaintiff was subdued and restrained. Nor have defendants

---

[5]    Defendants have submitted voluminous exhibits, but have not identified any evidence in these exhibits that establishes (i) when and how plaintiff sustained his facial injuries and (ii) whether any individual defendant had a realistic opportunity to intervene. Although the court "may in its discretion opt to 'conduct an assiduous review of the record,'" it "'is not required to consider what the parties fail to point out' in their Local Rule 56.1 statements." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir.2000)). Here, the court declines to independently comb through the several hundred pages of exhibits proffered by defense counsel.

23

established beyond genuine dispute, except as to defendants Rao and Donohue, that any other individual defendant or defendants present at the time plaintiff was subdued and restrained were nevertheless incapable of observing, and intervening to stop, the alleged kick(s) to plaintiff's face.  Accordingly, these facts must be determined at trial, and defendants' motion for summary judgment as to defendants' excessive force claim based on Deputy Marshals Bartosh, Banks, Dineen, and Ledogar's purported failure to intervene to stop Deputy Marshal Westfield's alleged use of excessive force is denied.

### 3. *Excessive Force Upon Entry*

Finally, with regard to the allegedly "'excessive force' upon the US Marshal[s'] entry" into the premises to arrest plaintiff, there is no genuine dispute of material fact that defendants entered the premises pursuant to a warrant, using a battering ram, and pursuant to procedures.

"An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Anderson v. United States*, 107 F. Supp. 2d 191, 196 (E.D.N.Y. 2000) (citing *Wilson v. Layne*, 526 U.S. 603, 611 (1999) and *U.S. v. Lovelock*, 170 F.3d 339 (2d Cir. 1999)).  Further, a law enforcement officer may "use such

force as is reasonable in light of the circumstances and dangers facing the officer at the time of the encounter with a citizen." *Hellman v. Gugliotti*, 279 F. Supp. 2d 150, 156-57 (D. Conn. 2003) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Moreover, using a battering ram to enter a dwelling pursuant to a valid warrant is not excessive force absent some indication of harmful bodily contact in making the entry. *See id.* (granting summary judgment to defendants, who "used a battering ram against the door to the plaintiff's premises in order to gain entry," because there was no indication that, in so doing, they applied any force to the plaintiff's person).

Here, there is no indication that defendants' legally valid entry itself resulted in the application of unreasonable force to plaintiff's person. Accordingly, defendants are entitled to summary judgment on plaintiff's claim for excessive force arising from their entry into the apartment to effect his arrest.

**B. Application of *Heck***

Defendants assert that the Report and Recommendation "wrongly concluded" that plaintiff's "conviction for assault on United States Marshals and assisting New York Police Officers" does not bar his excessive force claim pursuant to *Heck*. (Obj. at 9.) In *Heck*, the Supreme Court "h[e]ld that, in order to

recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff must prove that the conviction or sentence has been invalidated. 512 U.S. at 486-87.[6] Importantly, under *Heck*, "[a] plaintiff need not prove that *any* conviction stemming from an incident with the police has been invalidated, only a conviction that could not be reconciled with the claims of his civil action." *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014) (emphasis in quoted material) (quoting *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006)). Further, "[i]t is well established that an excessive force claim does not usually bear the requisite relationship to the underlying conviction under *Heck* to mandate its dismissal." *See Kuar v. Mawn*, No. 08-CV-4401(JFB)(ETB), 2011 WL 838911, at *11 (E.D.N.Y. Mar. 4, 2011) (quoting *Smith v. Fields*, No. 95-CV-8374, 2002 WL 342620, at *4 (S.D.N.Y. March 4, 2002)).

Here, in asserting that *Heck* bars plaintiff's excessive force claims, defendants argue that the Report and Recommendation "wrongly assumes that plaintiff's assault on law enforcement ended when he was wrestled to the ground," and

---

[6]    Although *Heck* dealt with an action under 42 U.S.C. § 1983, the Second Circuit has concluded that *Heck*'s favorable termination requirement applies to *Bivens* actions.  *Tavarez*, 54 F.3d at 110.

contends that "even when [plaintiff] was on the ground[,] he was wearing a bullet proof vest and [had] a small key secreted in his belt." (*Id.* at 10-11.) According to defendants, even when handcuffed, "plaintiff could have used the key to slip off the cuffs[,] seize an officer's gun[,] and continue the assault." (*Id.* at 11.) Defendants offer no citation to any evidence in the record for the foregoing assertions. (*See id.* at 10-11.) In any event, defendants' assertions do not render plaintiff's conviction for assault of officers irreconcilable with his excessive force claim based on his contention that he was kicked in the face after he had been subdued and handcuffed.

Instead, it is logically reconcilable that (1) plaintiff assaulted law enforcement officers as determined at his criminal trial; (2) as disputed in the instant action, plaintiff initially resisted his arrest by allegedly kicking and struggling with the officers as they attempted to handcuff him; and (3) after the arresting government officers overcame plaintiff's resistance, subdued plaintiff, and placed handcuffs on plaintiff, he was subjected to excessive force. Consequently, the court concludes that *Heck* does not bar plaintiff's excessive force claim against Deputy Marshal Westfield, or his failure to intervene claims against Deputy Marshals Bartosh, Banks, Dineen, and Ledogar, that are

27

predicated on genuine disputes of material fact after plaintiff was handcuffed.

### C. Qualified Immunity

Defendants contend that the defendant deputy marshals are entitled to qualified immunity. (*See* Obj. at 11-20.) "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). In deciding whether a right is clearly established, "[o]nly Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004) (citing *Townes v. City of New York*, 176 F.3d 138, 144 (2d Cir. 1999)).

The Supreme Court has emphasized that "courts must not define clearly established law at a high level of generality," and that "[a] rule is too general if the unlawfulness of the [official]'s conduct does not follow immediately from the conclusion that the rule was firmly established." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (internal

quotation marks and citations omitted).  Additionally, in
determining objective reasonableness, "the relevant question is
whether a reasonable offic[ial] could have believed the
[challenged conduct] to be lawful, in light of clearly
established law and the information the . . . offic[ial]
possessed."  *Moore*, 371 F.3d at 115 (quoting *Anderson v.
Creighton*, 483 U.S. 635, 641 (1987)).

Here, defendants assert, in sum and substance, that
the force exerted in effecting plaintiff's arrest was reasonable
in light of the "extraordinary life-threatening circumstances"
with which the arresting officers were presented, specifically,
"a would-be-arrestee [who] ha[d] previously repeatedly fired at
them," and who defendants believed intended to commit "suicide
by cop."  (Obj. at 18-19.)  Defendants contend that these
circumstances "clearly would have lead [sic] a reasonable police
officer to disbelieve plaintiff's claim to be surrendering," and
that the use of force was therefore "justified."  (Obj. at 19.)

Defendants' assertions regarding the reasonableness of
the force used in subduing and arresting plaintiff miss the key
point, because, as discussed above, the Report and
Recommendation concluded that the Defendant Deputy Marshals
should be denied qualified immunity based on their alleged
actions *after* plaintiff had been subdued, placed in handcuffs,

and arrested.  (*See* R&R at 7-9 (discussing basis for
recommendation to deny summary judgment in favor of Deputy
Marshals).)  Moreover, even assuming, as defendants assert
without citation to evidence, that plaintiff was wearing a
bulletproof vest and had a key in his belt (Obj. at 11), these
facts would not, in and of themselves, make it objectively
reasonable for an arresting officer to kick plaintiff in the
face after he was handcuffed and subdued.

On *de novo* review, the court rejects defendants'
objections regarding qualified immunity.  As Judge Orenstein
correctly concluded (*see* R&R at 8), "[i]t is indisputable that
freedom from the use of excessive force is a clearly established
constitutional right."  *Jeanty v. Cty. of Orange*, 379 F. Supp.
2d 533, 542 (S.D.N.Y. 2005).  Further, it was clearly
established in the Second Circuit at the time of plaintiff's
arrest that "the use of entirely gratuitous force is
unreasonable and therefore excessive."  *Tracy*, 623 F.3d at 99
n.5 (citing *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir.
1999)).

Construing the evidence in plaintiff's favor, the
court finds that based on the disputed evidence in the record,
kicking a subdued and restrained arrestee in the face violates
clearly established law, because the unlawfulness of this

30

conduct follows immediately from the legally established proposition that the use of "gratuitous" force is "unreasonable and . . . excessive." *See Wesby*, 138 S. Ct. at 590 (noting that, to violate clearly established law, the unlawfulness of an officer's challenged conduct must "follow immediately from the conclusion that the rule [making the conduct unlawful] was firmly established."). Finally, the court concludes that it is not objectively reasonable for an officer to kick a subdued and restrained arrestee in the face. Consequently, defendants' contention that they are entitled to qualified immunity at the summary judgment stage is without merit. The court notes, however, based on its *de novo* review of the record, that the qualified immunity issue is relevant only to defendant Deputy Marshals Westfield, Bartosh, Banks, Dineen, and Ledogar, as the court grants summary judgment to the remaining defendants on other grounds.

## II. Remainder of Report and Recommendation

Having considered and rejected specific objections by defendants, the court concludes there is no clear error in the remainder of Judge Orenstein's thorough and well-reasoned Report and Recommendation. Thus, under both clear error and *de novo* review, the court affirms and adopts the Report and Recommendation's conclusions that that plaintiff's claims

against the ATF and the USMS must be dismissed, and that

defendants are entitled to summary judgment on plaintiff's

claims for fabrication of evidence, excessive force in entering

the premises to effect plaintiff's arrest, and tight application

of handcuffs.[7] *See Jarvis*, 823 F. Supp. 2d at 163 (noting that a

district court need only review for clear error those portions

of a report and recommendation to which no party has objected

timely).

## Conclusion

For the foregoing reasons, and upon *de novo* review,

the court affirms and adopts Judge Orenstein's R&R in part.

Defendants' motion for summary judgment is granted in part and

denied in part, as follows:

(1)   Defendants' motion for summary judgment is DENIED with

respect to plaintiff's excessive force claim against

Deputy Marshal Westfield, based on plaintiff's

---

[7]   Although plaintiff's response to defendants' objection could be read to object to Judge Orenstein's recommendation that the undersigned judge grant defendants' motion for summary judgment as to plaintiff's fabrication of evidence claim, plaintiff's submission was not timely. Further, even if plaintiff's response had been timely, plaintiff's fabrication of evidence claim clearly is based on his contention that the evidence that formed the basis for his conviction for assaulting the officers was fabricated. (*See*, *e.g.*, Plaintiff's Opposition to Summary Judgment Motion, ECF No. 58, at 21 ¶ 12 ("A blatantly obvious cover-up was [i]nstituted by Marshals and ATF and assisted by NYPD to blame the shooting on plaintiff, to ignore, reject and obfuscate all evidence to the contrary.").) Consequently, even on *de novo* review, the court would conclude that plaintiff's conviction for assaulting officers "c[an]not be reconciled with the [fabrication of evidence] claims of his civil action," and *Heck* bars his fabrication of evidence claim. *Poventud*, 750 F.3d at 132 (citations omitted).

contention that Deputy Marshal Westfield kicked
plaintiff in the face after he had been subdued and
handcuffed;

(2)  Defendants' motion for summary judgment is GRANTED as
to plaintiff's claims that any of the Deputy Marshals
present at his arrest, other than Deputy Marshal
Westfield, used excessive force against plaintiff
after he had been subdued and handcuffed;

(3)  Defendants' motion for summary judgment is DENIED as
to plaintiff's claim that Deputy Marshals Bartosh,
Banks, Ledogar, and Dineen failed to intervene in
Deputy Marshal Westfield's purported use of excessive
force against plaintiff as set forth in (1) above;

(4)  Defendants' motion for summary judgment is GRANTED as
to plaintiff's claim that Deputy Marshals Rao and
Donohue failed to intervene in the use of excessive
force against plaintiff, based on undisputed evidence
establishing that even if excessive force was used,
Deputy Marshals Rao and Donohue lacked a realistic
opportunity to intervene; and

(5)  Defendants' motion for summary judgment is GRANTED in
all other respects, including with respect to
plaintiff's claims against the USMS and the ATF,

against defendant ATF Special Agents Stern and
Winston, and arising from purportedly excessive force
upon entry into plaintiff's apartment, as well as
plaintiff's claim that plaintiff's handcuffs were
applied too tightly.  (*See* May 19, 2017 Letter, ECF
No. 44.)

The parties are directed to confer and, within
twenty one (21) days, file a joint letter stating their
intentions with respect to this action.  Additionally, the
Clerk of Court is respectfully requested to serve a copy of
this order on plaintiff at his address of record.

**SO ORDERED.**

Dated:     October 4, 2018
           Brooklyn, New York

                          _____/s/_____
                          Hon. Kiyo A. Matsumoto
                          United States District Judge