UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
OSWALD LEWIS,

                Plaintiff,                              MEMORANDUM AND ORDER

                v.                                      16-CV-1057 (RPK) (TAM)

RYAN WESTFIELD, BRIAN BANKS,
CHRISTOPHER BARTOSH, ANTHONY
DINEEN, and ROBERT LEDOGAR,

                Defendants.
----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      Plaintiff Oswald Lewis brings claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), against several Deputy United States Marshals, alleging excessive force and failure to intervene to prevent excessive force. While Lewis's claims were pending, the Supreme Court held that *Bivens* did not provide an implied damages action to a plaintiff raising an excessive force claim against a Customs and Border Patrol agent. *See Egbert v. Boule*, 142 S. Ct. 1793 (2022). At the Court's invitation, the parties submitted briefs addressing whether *Egbert* forecloses Lewis's *Bivens* claims. Because *Egbert* does foreclose those claims, they are dismissed.

## BACKGROUND

      In 2014, defendants Ryan Westfield, Christopher Bartosh, Brian Banks, Robert Ledogar, and Anthony Dineen—all Deputy United States Marshals—participated in plaintiff's arrest in Queens. *See* Defs.' Local Rule 56.1 Statement ¶¶ 7-10 (Dkt. #57-3) ("Defs.' Statement"); Decl. of Kevan Cleary, Ex. 8 (Dkt. #57-6). The deputies arrested Lewis pursuant to an arrest warrant. *See* Defs.' Statement ¶ 5; Pls.' Opp'n to Defs.' Local Rule 56.1 Statement ¶ 5 (Dkt. #58-1) ("Pl.'s Statement").

1

The parties have differing accounts of what occurred during the arrest. According to defendants, Lewis fired at officers from his bedroom. *See* Defs.' Statement ¶ 28. The officers then fired back, injuring Lewis. *Id.* ¶¶ 33, 36. Defendants allege that when Lewis ultimately came out of the apartment building, he resisted arrest, leading to a struggle before officers were able to handcuff him. *Id.* ¶¶ 40-44.

Lewis, in contrast, asserts that he was shot while unarmed. Pl.'s Statement ¶ 31. He asserts that after he surrendered to officers, Westfield kicked him numerous times in the face. *Id.* ¶ 40; Pl.'s Affirmation ¶ 7 (Dkt. #58-2). Lewis alleges that the other defendants failed to intervene to prevent Westfield from using excessive force against him. *See* Pl.'s Affirmation 3 ¶ 7; Order Adopting in Part Report and Recommendation 20-24 (Dkt. #67) ("Summary Judgment Order").

In a criminal case in this district, Lewis was convicted of assaulting the arresting officers with a deadly weapon, unlawfully discharging and possessing a firearm, and doing so while a fugitive and a previously convicted felon. He was also convicted of possessing a firearm with an obliterated serial number. *See* Judgment, *United States v. Lewis*, No. 14-CR-523 (ILG) (E.D.N.Y. Oct. 20, 2016), Dkt. #170.

In 2016, Lewis filed this civil lawsuit alleging constitutional violations in connection with his arrest and prosecution. Judge Matsumoto, the then-assigned district judge, dismissed plaintiff's claims against the Bureau of Alcohol, Tobacco, Firearms, and Explosives and the United States Marshals Service ("USMS"). *See* Judgment (Dkt. #75). She then granted summary judgment to the individual defendants on all claims except for the excessive-force claim against Westfield pertaining to the alleged use of force after Lewis was handcuffed, and the claims that Bartosh, Banks, Ledogar, and Dineen failed to intervene in that alleged use of force by Westfield. *See* Summary Judgment Order 32-34.

Shortly before the scheduled trial date, the Supreme Court decided *Egbert*, which addresses the availability of *Bivens* civil remedies for Fourth Amendment violations. Upon this Court's invitation, the parties submitted briefs addressing whether *Egbert* forecloses Lewis's remaining claims in this case. *See* July 5, 2022 Order (Dkt. #173).

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a factual dispute is material if it "might affect the outcome of the suit under the governing law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation and internal quotation marks omitted). In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all reasonable factual inferences in favor of the non-movant. *See ibid*. A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Plaintiff proceeds *pro se*. A court "is ordinarily obligated to afford a special solicitude to *pro se* litigants . . . particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (quotation marks and citations omitted). A court must "liberally construe" documents "submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).

**DISCUSSION**

After *Egbert*, Lewis's *Bivens* claims cannot succeed. Lewis's excessive-force and failure-to-intervene claims present a new context under *Bivens*. And special factors counsel against recognizing a new judicial remedy for the constitutional violations Lewis alleges. Accordingly, Lewis's remaining claims are dismissed.

## I. *Bivens* Framework

Civil damages for constitutional violations are available against federal officers only in limited circumstances. Congress has not enacted a statute providing for such damages. However, in 1971, the Supreme Court recognized an implied cause of action to seek damages for one such violation: a Fourth Amendment claim against federal narcotics officers arising out of their warrantless arrest of a man in his home. *Bivens*, 403 U.S. at 389. The Court recognized two more implied damages actions in the decade that followed. See *Davis v. Passman*, 442 U.S. 228, 248-49 (1979); *Carlson v. Green*, 446 U.S. 14, 18-23 (1980). Afterward, though, the Supreme Court "came to appreciate more fully the tension between this practice and the Constitution's separation of legislative and judicial power." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). As a result, it has held that the "expansion of *Bivens* is a disfavored judicial activity." *Id.* at 742 (internal quotation marks omitted). And it has "consistently refused to extend *Bivens* to any new context or new category of defendants" for over forty years. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (internal quotation marks omitted).

Under the Court's most recent decisions, determining whether a plaintiff may bring an implied damages action against federal officers for the violation of a constitutional right requires a two-step inquiry. First, the court should "ask whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages

4

action." *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*, 137 S. Ct. at 1858).  If "a claim arises in a new context, a *Bivens* remedy is unavailable if there are any 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Ibid.* (quoting *Ziglar*, 137 S. Ct. at 1858).  For example, because the existence of "an alternative remedial structure" is a factor that counsels hesitation, "a court may not fashion a *Bivens* remedy if Congress already had provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Id.* at 1804 (quoting *Ziglar*, 137 S. Ct. at 1858).  That is true even if "existing remedies do not provide complete relief." *Ibid.* (internal quotation marks omitted).

The Court applied these principles in *Egbert* to foreclose an implied Fourth Amendment damages action against a Customs and Border Patrol agent who had allegedly used excessive force against the plaintiff while investigating possible immigration violations.  At the first step of the *Bivens* analysis, the Court held that the claim presented a new *Bivens* context.  At the second step, the Court held that there was reason for courts to hesitate before recognizing an implied damages action against the defendant, because Congress was better positioned than the judiciary "to create remedies in the border-security context" and because "the Government already has provided alternative remedies" to individuals such as the plaintiff.  *Ibid.*

## II.  A *Bivens* Claim Is Unavailable Here

These principles foreclose the recognition of a *Bivens* cause of action for Lewis's excessive-force and failure-to-intervene claims.  Lewis's claims arise in a new *Bivens* context and present special factors counseling hesitation.  Defendants are thus entitled to summary judgment.

5

### A. New Context

Lewis's claims arise in a new *Bivens* context. New contexts include cases that "involve[] a 'new category of defendants,'" *Egbert*, 142 S. Ct. at 1803 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)), or differences in

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1860.

Plaintiff's excessive-force and failure-to-intervene claims present a new *Bivens* context. The defendants are Deputy Marshals, rather than federal narcotics agents. *See Egbert*, 142 S. Ct. at 1804 (accepting court of appeals's conclusion that Fourth Amendment excessive-force claim against Customs and Border Patrol agent "presented a new context for *Bivens* purposes"); *Boule v. Egbert*, 998 F.3d 370, 387 (9th Cir. 2021) (finding new context because defendant was "an agent of the border patrol rather than of the F.B.I," even though both types of agents are "federal law enforcement officials"); *see also, e.g.*, *Edwards v. Gizzi*, No. 20-CV-7371 (KMK), 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022) (lawsuit against Deputy U.S. Marshals presented new context because "the officers involved in *Bivens* were federal narcotics agents" and therefore part of "an investigatory and enforcement force," rather than members of the U.S. Marshals Service); *Martinez v. D'Agata*, No. 16-CV-44 (VB), 2019 WL 6895436, at *7 (S.D.N.Y. Dec. 18, 2019) (finding a "meaningful difference" between *Bivens* and case at hand because "the type of officers involved in *Bivens* were DEA agents, whereas here the officers were appointed members of a federal task force"). In addition, the defendants here acted under a different "legal mandate" than the defendants in *Bivens*. *Ziglar*, 137 S. Ct. at 1860. While the officers in *Bivens* were attempting

6

to conduct a warrantless arrest, *ibid.*, the defendants here were executing an arrest warrant, pursuant to the Marshals Service's statutory authority to "execute all lawful writs, process, and orders issued under the authority of the United States," 28 U.S.C. § 566(c). *See, e.g.*, *Oliveras v. Basile*, 440 F. Supp. 3d 365, 371-72 (S.D.N.Y. 2020) (defendants operated under a different legal mandate from the officers in *Bivens* when they had a warrant to arrest plaintiff); *D'Agata*, 2019 WL 6895436, at *7 (same).

These differences establish that Mr. Lewis's claims present a new context.

### B. Special Factors

The existence of alternative remedial schemes counsels against extending *Bivens* to plaintiff's claims. In *Egbert*, the Supreme Court held that the existence of alternative remedial schemes is a special factor that counsels hesitation in extending *Bivens*—even with respect to extensions involving Fourth Amendment claims in "the common and recurrent sphere of law enforcement." *Egbert*, 142 S. Ct. at 1805 (internal quotation marks omitted). The Court in *Egbert* found alternative remedies in a statute requiring the Border Patrol to "control, direc[t], and supervis[e]" its employees, *id.* at 1806 (quoting 8 U.S.C. § 1103(a)(2)), and a regulation requiring the agency to accept grievances and investigate violations of standards for law enforcement activities, *ibid.* (citing 8 C.F.R. § 287.10(a)-(b)).

Comparable remedial schemes counsel hesitation here. The Director of the Marshals Service is statutorily obligated to "supervise and direct the United States Marshals Service in the performance of its duties." 28 U.S.C. § 561(g). And by regulation, the Director "shall" investigate "alleged improper conduct on the part of U.S. Marshals Service personnel." 28 C.F.R. § 0.111(n). Anyone aggrieved by a Deputy Marshal's conduct may file a grievance alleging improper conduct. *Ibid.* A complaint form for doing so is available on the website of the Marshals Service. *See*

7

Complaint Form Regarding United States Marshal Service Personnel or Programs, https://www.usmarshals.gov/resources/forms/complaint-form-regarding-united-states-marshals-service-personnel-or-programs (last visited 11/10/2022). In addition, by statute, the Attorney General is required to ensure that "any component" of the Department that receives a "nonfrivolous allegation of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice . . . shall report that information to the Inspector General." 5 U.S.C. App. 3 § 8E(d). Congress has also authorized the Department's Inspector General to "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice," "refer such allegations to the Office of Professional Responsibility," or refer them to "the internal affairs office of the appropriate component" of the Department, including the USMS. *Id.* § 8E(b)(2). The Department's Inspector General provides a link on its website through which any person may report allegations of wrongdoing. *See* Hotline, https://oig.justice.gov/hotline (last visited 11/10/2022).

*Egbert* made clear that remedial schemes of this sort "foreclose a *Bivens* action," because "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." 142 S. Ct. at 1806-07. Accordingly, this Court may not extend *Bivens* to provide an implied civil damages action for Lewis's claims against Deputy Marshals in this case.

## CONCLUSION

Lewis's claims for excessive force and failure to intervene under *Bivens* are dismissed. The Clerk of Court is respectfully directed to enter judgment in favor of defendants and close this case.

SO ORDERED.

                                          */s/ Rachel Kovner*
                                          RACHEL P. KOVNER
                                          United States District Judge

Dated: November 14, 2022
        Brooklyn, New York